ELBERT H. TRAVIS, RESPONDENT, v. GUSTAVA UNKART, INDIVIDUALLY, AND AS EXECUTRIX OF MARY E. UNKART, DECEASED, APPELLANT.

Submitted July 10, 1916—Decided November 20, 1916.

1. A contract, made by a sister, because of a threat to subject her brother to imprisonment, is void for duress; and the question whether or not, in view of conflicting testimony, there was such a threat, is one for the jury.
2. Duress, to be available as a defence in an action upon contract, must have been exercised upon him or her who sets it up as a defence by him who claims the benefit of the contract, or by someone acting in his behalf or with his knowledge.

On appeal from a judgment of the Supreme Court.

For the appellant, *Wendell J. Wright.*

For the respondent, *Henry T. Stetson.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought to recover the amount due upon a promissory note for $2,676,

executed by Mary E. Unkart (now deceased), to the order of the plaintiff, and endorsed by the defendant, Gustava Unkart, individually. The making and endorsement of the note were admitted, the defences being (1) that the signatures of the maker and endorser were obtained by threats and duress; and (2) that the note was without consideration.

The undisputed testimony in the case showed that this note was given for the purpose of discharging two other notes made to the order of the plaintiff by L. Fred Unkart, a son of Mary, and a brother of Gustava; and that these two notes were surrendered by the plaintiff to the defendant, Gustava Unkart, at the time of the delivery to him of the note in suit, and have never been returned to him. The defence of lack of consideration therefore failed.

In support of the defence that the note was obtained by duress the defendant, Gustava Unkart, testified to the following facts: Having received notice that the plaintiff had brought suit against her brother upon the two notes executed to him by the latter, and her brother being then away from home, she called at the plaintiff's office to inquire about the matter. During the course of their conversation the plaintiff told her that she and her mother had better advance the money to take up the notes then in suit, or give a note for that purpose; that her brother had signed bonds in the custom house (he was a custom-house broker), giving as security a certain piece of property in Tenafly, and that if the brother was not the owner of this property—as the sister asserted— he had committed a state's prison offence; and intimated that if the mother and daughter did not take up the son's notes he would send the brother to state's prison. She further testified that she endorsed the note involved in the present litigation in order to protect her brother from the criminal prosecution. The plaintiff, in rebuttal, took the witness-stand and denied ever having had any conversation with this defendant, suggesting that her brother had committed a state's prison offence, or that if the brother's notes were not taken up he would send him there. On this state of the proofs the trial court considered that even if the testimony on the part of the

defence was given full and complete credence, a case of duress had not been made out against the plaintiff; and for this reason directed a verdict for the full amount of his claim, with interest, against the defendant, Gustava Unkart, both individually and as executrix of her mother. The question presented by this appeal is whether this judicial action can be legally justified.

It is to be observed that neither in the testimony which has been excerpted, nor in any other part of the proofs, does it appear as a fact that L. Fred Unkart had ever defrauded the custom-house officials in the way suggested in the conversation between the parties as related by Gustava Unkart, or that he had committed any offence which would have subjected him to a criminal prosecution; and that no presumption exists in favor of his criminality. This being so, the case, in its legal aspect, is almost identical with that of *Ball* v. *Ball,* 79 *N. J. Eq.* 170, so far as the defendant is concerned individually. In that case a conveyance was made by parents to a creditor of their son, under pressure of a threat to have the son criminally prosecuted. The conveyance was made in the honest belief by the parents that the son had subjected himself to such a prosecution, although the contrary was the fact. It was held by this court that the conveyance so obtained was void for duress exercised upon the grantors by the grantee.

Ordinarily, contracts which have been set aside upon the ground of duress are made by a parent or child on a threat of imprisonment against the other, or by a husband or wife on a like threat. There seems no reason, however, why the doctrine should not be equally applicable in the case of brother and sister, and, indeed, it has been so held when the question has been presented for determination. *Schultz* v. *Catlin,* 78 *Wis.* 611; *Davis* v. *Luster,* 64 *Mo.* 43.

We conclude, therefore, that if the testimony given by Gustava Unkart on the witness-stand be true, her contract of endorsement was void by reason of illegal duress exerted upon her by the plaintiff. Whether or not her story was truthful was, of course, a question to be determined by the jury. The judgment against her, individually, having been improperly directed must be reversed.

The judgment against the estate of the deceased mother stands on a different footing. Duress, to be available as a defence in an action upon contract, must have been exercised upon him or her who sets it up as a defence by him who claims the benefit of the contract, or by someone acting in his behalf or with his knowledge. *Mullin* v. *Leamy,* 80 *N. J. L.* 484. There was no attempt on the part of the defence to prove that the plaintiff had any knowledge that what he had stated (as testified to by Gustava) with relation to the criminality of her brother would be communicated to the mother; nor was there any direct proof that it had been communicated to her; or that he had knowledge that the mother's act in signing the note was induced to any extent by his remarks to the daughter. More than that, the case fails to show, by any competent evidence, that the mother was in fact induced to sign the note in suit by reason of any fear on her part that her son would be prosecuted for a violation of the criminal law in falsely and fraudulently representing himself to the custom-house officials as being the owner of the Tenafly property. So far, therefore, as the judgment against her executrix is concerned, we see no ground for interfering with it.

As to the judgment against appellant, individually—

*For affirmance*—BERGEN, BLACK, WHITE, TAYLOR, JJ.    4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, HEPPENHEIMER, WILLIAMS, GARDNER, JJ.    11.

As to the judgment against appellant as executrix—

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.    15.

*For reversal*—None.